

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Alfred N. Steinle
County Attorney
Atascosa County
Jourdanton, Texas

Dear Sir:

Opinion Number O-825
Re: Liability of county for the
payment of costs and expenses
accruing in a suit to foreclose
Vendor's Lien retained for the
unpaid part of the purchase money
of land granted to Atascosa County
for school purposes; and disposi-
tion of profit derived from invest-
ment and re-investment of the money
in the Permanent School Fund.

We acknowledge receipt of your letter in which you
propound the following questions:

1. "May the costs, expenses, attorneys' fees
and taxes accrued as a result of the sale and
subsequent foreclosure of the lien against the
land lying in LaSalle County and constituting
a part of the Permanent School Fund of Atascosa
County be paid from the Available School Fund of
Atascosa County?"

2. "Whether or not profit derived from pur-
chase, sale and re-investment of the cash in the
Permanent School Fund of the county should become
a part of the Permanent Fund or the Available
Fund?"

To answer your first question we deem it necessary
that we review the constitutional provision and laws under
which the counties of this State have been apportioned land
for school purposes. By virtue of an Act approved January
26, 1839, certain leagues of land were granted to the various
counties of the State for purposes of education. This Act

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Alfred N. Steinle, page #2

was enlarged upon by the Act of January 16, 1850. At an
election on August 14, 1883, Section 6, Article 7, was
adopted and became a part of our present Constitution.
This provision reads, in part:

"All land heretofore or hereafter granted
to the several counties of this State for edu-
cational purposes are of right the property of
said counties, respectively, to which they were
granted and title thereto is vested in said
counties and no adverse possession or limitation
shall ever be available against the title of any
county * * * Each county may sell or dispose of
its land in whole or in part in a manner to be
provided by the commissioners' court of the
county. Said land and the proceeds thereof when
sold shall be held by said counties alone as a
trust for the benefit of public schools therein;
said proceeds to be invested in bonds of the
United States, the State of Texas or counties
in said State, or in such other securities and
under such restrictions as may be prescribed by
law; and the counties shall be responsible for
all investments; the interest thereon and other
revenue, except the principal, shall be avail-
able funds."

Pursuant to this constitutional provision the Legis-
lature enacted Article 2824, of the Revised Civil Statutes of
1925, which prescribed the type of bonds in which the commis-
sioners' courts of the various counties are authorized to
invest the proceeds of the sale of the land granted to them
for educational purposes. This article likewise re-emphasizes
that provision of the Constitution relating to the uses of the
income derived therefrom. It states in clear language that
"only the interest thereon to be used and expended annually."
We think the question well settled that the corpus of the
school fund must remain intact and unused, and that only the
earnings therefrom shall ever be expended.

The returns from the investment of the Permanent
School Fund become the "available fund" and the manner of
expending such income is limited by the provision of Article



2827 of the Revised Civil Statutes of 1925. We think there is no question but that the interest collected on the vendor's lien note retained by Atascosa County became a part of the Available Fund and, as such fund, it passed from the jurisdiction of the Commissioners' Court of the county and subsequent expenditures therefrom can be made solely upon the authorization of the County Board of Trustees and the County Superintendent acting as their agent. See the case of Oge et al vs. Froboese et al, 66 S. W. 688, (rehearing denied). In our opinion this precludes the Commissioners' Court or the county from resorting to the Available Fund for the payment of costs, expenses, attorneys' fees and taxes which may have accrued against the land heretofore granted to the county for educational purposes.

Article 2351, Section 8, of the Revised Civil Statutes of 1925, reads as follows:

"Each Commissioners' Court shall provide for the protection, preservation and disposition of all lands granted to the county for education or schools."

We, therefore, think that it became the duty of the Commissioners' Court to bring suit to recover the land in question, and that any expense incurred as a result thereof should be borne by the county. In support of this conclusion we cite from the case of Tomlinson vs. Hopkins, County, reported in Volume 57 of the Texas Reports, at page 572, wherein the court speaking through Associate Justice Bonner said: "The whole policy of the several acts, both of the Republic and of the State of Texas, in granting land for the establishment of a general system of education was to make the land thus granted an available net fund for this purpose; and it was not intended that any part of it should be diverted to any other purpose, not even to the expense of locating and surveying it." These lands were granted to the various counties in trust for the benefit of the schools of such counties, and the counties have been made responsible for the safeguarding of such funds as may have been derived from the sale of the land granted to it.



"All agricultural or grazing school land
mentioned in Section 6 of this article owned
by any county shall be subject to taxation ex-
cept for State purposes to the same extent as
land privately owned."

Therefore, we think that if the lands of Atascosa County ly-
ing within LaSalle County are classified as either agricul-
tural or grazing land, then it must follow that Atascosa
County is liable for the taxes due LaSalle County. In the
case of Childress County vs. State et al, reported in 92 S. W.
(2d) 1011, the Supreme Court said: "Where agricultural school
land was sold by counties to individuals who failed to comply
with contracts of sale, whereupon title to lands reverted to
county, such land could not be burdened with taxes due the
State during time land was privately owned," and the same
court, speaking further, said: "A county which did not re-
acquire title to agricultural school land situated in another
county until February, 1933, re-acquired land subject to
taxes due such other county for the years 1931 and 1932, and
the county re-acquiring land had option of paying taxes to
protect its interest or let land be sold for such taxes * *".
In other words, the court held that a judgment for taxes duly
and lawfully levied against school land could not be enforced
against the county to whom such land had been granted, but
this, in our opinion, does not relieve the responsible county
of liability to the Permanent School Fund of its county.

Summing up these conclusions we advise that, in our
opinion, the expenses incurred in connection with the recovery
of the land belonging to the public free schools of Atascosa
County must be paid from the General Fund of the county and
that the taxes duly and lawfully levied against such land by
LaSalle County may be paid out of the <u>revenue derived from the
land</u>, but that in the event there is no such revenue then such
taxes shall be paid from the General Fund. See A$_r$ticle 7150a,
Revised Civil Statutes of 1925.

To answer your second question we refer you to the
last sentence of Section 6, Article 7, of the Constitution,
which provides:

Honorable Alfred N. Steinle, page #5

> "Interest thereon and other revenue, except
> the principal, shall be available funds."

We think the expression "other revenue" is intended to cover any revenue earned by the Permanent School Fund as a result of the investment of the proceeds of the sale of land granted by law to that county for educational purposes. Then it necessarily follows that our conclusion is that any profit earned by this fund should become a part of the Available Fund.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Clarence E. Crowe_
Clarence E. Crowe
Assistant

CEC-s

APPROVED SEPT. , 1939
GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

APPROVED:
OPINION COMMITTEE
BY B.W.B., Chairman